UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

In the Matter of the Application of
RENT STABILIZATION ASSOCIATION
OF N.Y.C., INC., on its own behalf and
on behalf of its members,

Petitioner,

for an order pursuant to Rule 27 of the
Federal Rules of Civil Procedure authorizing
Petitioner to take the depositions of, and requiring
the production of documents by,
TONINO SOLIMINE, ESTON CLARE, and
T&S TRUCKING CORPORATION,

Respondents.

------------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 0 7 2008 ★

**BROOKLYN OFFICE**

VERIFIED PETITION

**MISC 08      544**

**SEYBERT,**

Petitioner Rent Stabilization Association of N.Y.C., Inc., by its attorneys,

Seiff Kretz & Abercrombie, for its Verified Petition in this proceeding, alleges as follows,

upon information and belief:

## INTRODUCTION

1.     On or about July 17, 2007, respondents Tonino Solimine

("Solimine") and Eston Clare ("Clare") were indicted for embezzlement of heating oil and

money laundering that they allegedly engaged in while acting on behalf of respondent

T&S Trucking Corporation ("T&S"), an oil transporter or delivery company.  Solimine and

Clare were notified by the federal government that upon their conviction for either

offense, the government would seek forfeiture of at least approximately $25 million.  (A

copy of the Indictment, CR-07-567 (JS)(MLO), is annexed as Exhibit A.)

2.     Rent Stabilization Association of N.Y.C., Inc. ("RSA") and many of

its members, who own and/or manage approximately 45,000 residential buildings in the

five boroughs of New York City, are among those whose heating oil was delivered by respondent T&S during the period in which the embezzlement scheme took place, and they have collectively suffered substantial monetary losses in amounts not yet determined.

3.      RSA and its members petition this Court for relief that would enable them to pursue a restitution claim against the respondents in the context of the pending criminal prosecution of respondents Solimine and Clare.  Petitioner and its members know of no other source for the information they seek and have no other means by which the information can be gathered that would enable them to present their restitution claims in the context of the pending criminal prosecution.  Petitioner respectfully urges the Court to direct that the requested depositions and document production be conducted as soon as reasonably possible so that the restitution proceedings can proceed without delay at the conclusion of the prosecution.

4.      RSA and its members seek an order from the Court specifically authorizing the taking of respondents' depositions and directing respondents to produce at those depositions the documents identified on the list annexed as Exhibit B.  The proposed discovery would enable RSA and its members to properly identify the potential victims of the embezzlement and make a reasonable assessment of the extent of any losses suffered by them.  Without such discovery prior to the restitution hearing, petitioner and its members would have little option but to assert claims on behalf of all of RSA's members and to burden the United States Attorneys Office and this Court, as well as RSA, its members and the respondents with a protracted process of identifying and assessing each of the potential restitution claims.

5.      RSA and its members hope to pursue their claims of restitution only in the context of the pending prosecution of respondents Solimine and Clare (and the related prosecution of Leonard Baldari and Michael David Hiller (see Exhibit C)). However, depending on the outcome of the restitution proceedings (and the government's forfeiture claims), RSA and its members might thereafter be compelled to commence a civil action against Solimine and Clare, T&S and possibly others (as well as Baldari and Hiller), in order to fully recover their losses.

<u>PARTIES</u>

6.      RSA is a trade association organized and existing under the laws of the State of New York, with its principal place of business located at 123 William Street, New York, New York.  RSA is comprised of small, medium and large residential property owners and managers of approximately 45,000 buildings, with a total of approximately one million apartments, out of the approximately 78,000 existing residential buildings throughout the five boroughs of New York City.  As such, RSA's members collectively purchase and consume a substantial portion of the heating oil delivered to consumers in New York City.  Consequently, a great many of RSA's members would have received deliveries from T&S throughout the seven or eight year period covered by the Solimine and Clare indictment, and some or all of them would have been victimized by the heating oil embezzlement scheme for which Solimine and Clare have been indicted (as well as by a similar heating oil embezzlement scheme for which Leonard Baldari and Michael David Hiller also have been indicted (a copy of the Baldari and Hiller Indictment, CR 07-568 (DRH)(MLO) is annexed as Exhibit C).  (With the filing of this petition, RSA and its members also are filing essentially the same

3

petition to be heard by the Court before whom the Baldari and Hiller prosecutions now are pending.)

7.      At all relevant times, respondent Solimine was the chief executive officer, sole shareholder and an employee of respondent T&S, and all actions allegedly taken by him with respect to the embezzlement of heating oil and money laundering were taken on behalf of, and in his capacity as a principal of, T&S.  Respondent Solimine resides at 29 Shrewsbury Drive, Rumson, New Jersey.

8.      At all relevant times, respondent Clare was the office manager and controlling person of T&S, and all actions allegedly taken by him with respect to the embezzlement of heating oil and money laundering were taken on behalf of, and in his capacity as a principal of, T&S.  Respondent Clare resides at 1726 E. 46th Street, Brooklyn, New York.

9.      Respondent T&S was at all relevant times a transporter of heating oil for oil retailers operating in the greater metropolitan area of New York City.  T&S is incorporated under the laws of the State of New York and its principal place of business at all relevant times has been at 53 2nd Avenue, Brooklyn, New York 11215.

<u>JURISDICTION AND VENUE</u>

10.      This petition is filed pursuant to Rule 27 of the Federal Rules of Civil Procedure and an independent basis for federal jurisdiction need not exist.  The testimony and documents sought by petitioners are for use in the contemplated pursuit of restitution before this Court in the pending criminal proceedings against respondents Solimine and Clare, in which petitioners will seek recovery of their losses pursuant to 18 U.S.C. §§ 3663A and 3771.  Depending on the outcome of the restitution proceedings (and the government's forfeiture claims), petitioners might also commence a civil action

4

against the respondents and others in this district, perhaps asserting civil RICO as well as other claims for which this Court would have jurisdiction pursuant to 28 U.S.C. § 1331, or, alternatively, 28 U.S.C. §§ 1332 and/or 1367.

11. Venue of this petition in the Eastern District of New York is proper pursuant to 28 U.S.C. § 1391(b).

## CLAIM FOR RELIEF

12. Some or all of RSA's members intend to pursue restitution from respondents Solimine and Clare in the context of their pending criminal prosecution, and to pursue further recovery, if warranted, against respondent T&S and possibly others.

13. Petitioner and its members cannot presently seek restitution or relief in a civil action, or cause restitution to be sought by the government or civil relief to be sought by the government or anyone else, because they are unable to verify that T&S served as the transporter that delivered heating oil to their premises on behalf of the retailers with whom petitioner and its members transacted business, and can not independently determine the volume of the deliveries made by T&S.

14. As the indictment of respondents Solimine and Clare indicates, a transporter such as T&S delivers heating oil from oil tank storage facilities, or terminals, to residential and commercial customers for the retailers it serves. Typically, the identity of the transporter is not known to the retail customer, is not readily indicated on the tanker truck used to deliver the heating oil, and is not reflected on the bills provided to the customers by the retailer.

15. During the period of time the embezzlement scheme was conducted by respondents Solimine and Clare, according to the indictment, RSA and its

5

members transacted business with several heating oil retailers doing business in the greater metropolitan area of New York City. At the same time, T&S provided transport and delivery services for an unknown number of those same retailers for unspecified periods of time throughout the period of the alleged embezzlement scheme.

16. Without the testimony and documents of the respondents, RSA's members will not be able to properly or effectively seek restitution or persuade the government to do so, or effectively pursue any other civil relief from respondents.

The Subject Matter of the Expected
Restitution Proceeding and Possible Civil Action

17. Petitioner RSA and those of its members who have been victimized by the embezzlement scheme of respondents Solimine and Clare will seek recovery in the restitution proceedings at the conclusion of the pending criminal prosecutions of Solimine and Clare. In the event the restitution does not adequately address the harm suffered by RSA's members, a civil action also might be commenced against Solimine, Clare, T&S and any other party potentially responsible for the harm.

18. Petitioner RSA is interested in obtaining the relief sought not only to benefit those of its members who have been harmed by the embezzlement scheme, but also for its own benefit as a sponsor of a cooperative for its smaller members through which heating oil is purchased by agreement with the oil companies at a better rate than RSA's smaller members could purchase on their own. Consequently, RSA itself, as the sponsor of the cooperative, no doubt was victimized by respondents' embezzlement scheme as it apparently undermined the very purpose of the cooperative and caused the participants to suffer losses with each delivery shorted through embezzlement. Consequently, RSA and its members belonging to the cooperative would directly

6

participate in the effort to recover restitution and possibly civil damages from the respondents as well as others.

### The Testimony To Be Elicited, And The Information To Be Drawn From Documents Sought

19.     The United States Attorneys Office is constrained from sharing with RSA and its members whatever the fruits might be of its investigation to date of the embezzlement scheme engaged in by respondents.  In addition, the indictment of respondents Solimine and Clare provides limited information about the scheme, though charging that the scheme involved the sale by respondents Solimine, Clare and possibly others of "millions of gallons of embezzled heating oil for an aggregate amount of approximately $25 million."

20.     While each of RSA's members might have been a victim of heating oil embezzlement, the nature of the product and its pricing and consumption are such that we seek to establish the specific factual basis for each restitution claim that would justify incurring the necessary costs and making the necessary allegations to pursue the claims for restitution in the context of the pending criminal prosecution.  At a minimum, we would want to know the RSA members to whom T&S delivered heating oil during the period of the embezzlement scheme, and the reported volume of the deliveries to each. We then would match that information up with our own, as well as with other information to which respondents' data might lead us, to present our claim for restitution.

21.     The testimony we would seek to elicit and the information we would seek to obtain from respondents' documents therefore might encompass the identity of the T&S drivers believed to have participated in the scheme; the routes known to be driven by those drivers, and when; the retailers for whom deliveries were made on those

routes; the customers on those routes so that the RSA members can be identified; the periods of time the RSA members were customers on those routes; and any other information that would enable RSA and its member to determine the potential victims of the scheme, the potential extent of the damage caused to each victim, and the possible participants in the wrongdoing in addition to respondents.  (See Exhibit B.)

22.     Only by obtaining the information sought can a restitution claim be properly and efficiently presented on behalf of those members of RSA known to have received deliveries from T&S drivers during the period the scheme is known to have been in effect.  Otherwise, all of RSA's members could be asserting a claim for restitution or a claim for damages that would spawn protracted proceedings at great expense to all involved.  Only after extensive efforts wastefully undertaken would the proper claimants be in a position to make appropriate allegations.  The discovery sought by petitioners at this stage would avoid such waste and expense.

Preventing A Failure Or Delay Of Justice

23.     In its indictment of respondents Solimine and Clare, the federal government has notified them that upon their conviction, by plea or verdict, the government would seek forfeiture in an amount equal to at least approximately $25 million.  RSA and its members have notified the Court of their intention to seek restitution (see Exhibit D) and also intend to apply to the Court to have a portion of any funds recovered by forfeiture to be preserved for purposes of satisfying their restitution claims.  They then would seek to cooperate with the government in making the necessary assessment of each victim's claim for restitution, and presenting those claims to the Court for consideration.

8

24.    Without the benefit of the testimony and documents sought by petitioners, RSA and its members could not begin to make a reliable assessment of the extent of the harm suffered by each member.  Without that information, RSA and its members could not provide any meaningful cooperation to the government in assessing and presenting any restitution claims and, as a practical matter, the claims could not be pursued in the context of the pending criminal proceeding – which would be the most efficient and cost effective forum to resolve the claims, for all involved.  The loss of such an opportunity truly would be a failure of justice.

WHEREFORE, it is respectfully requested that each of the respondents be directed to appear for a deposition and to produce in advance of the depositions the documents sought by petitioner, and that petitioner be granted such other relief as the Court deems just, together with an award of costs.

Dated:      New York, New York
            October 27, 2008

                                        SEIFF KRETZ & ABERCROMBIE
                                        Attorneys for Petitioner

                                        By: _____
                                            Walter A. Kretz, Jr. (WK-4645)
                                        444 Madison Avenue
                                        New York, NY  10022
                                        (212) 371-4500

VERIFICATION

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

JOSEPH STRASBURG, being duly sworn, says:

I am the president of the petitioner Rent Stabilization Association of

N.Y.C., Inc. ("RSA"), and submit this Verification in support of the annexed Verified

Petition on behalf of RSA and its members.

I have read the foregoing Verified Petition and know its contents. The

contents are true of my own knowledge, except as to the matters stated upon

information and belief, and as to those matters I believe them to be true.

The basis for my belief is my review of the indictment referred to in the

petition, my communications with RSA members, and my knowledge of the customs

and practices of RSA and its members with respect to the purchase of heating oil.

Joseph Strasburg

Sworn to before me this
27 day of October, 2008

Notary Public

MITCHELL L. POSILKIN
Notary Public, State of New York
No. 02PO5074814
Qualified in Bronx County
Commission Expires 3/24, 20 11

# EXHIBIT A

MJL:BTR
F.#2006R01293

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

TONINO SOLIMINE and
ESTON CLARE,

                    Defendants.

- - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

☆   JUL 12 2007   ☆

LONG ISLAND OFFICE

CR 07 567

I N D I C T M E N T

Cr. No. _____ SEYBERT, J.
(T. 18, U.S.C., §§ 659,
981(a)(1)(C), 982(a)(1),
982(b)(1), 1956(h), 2
and 3551 et seq.;
T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

ORENSTEIN, M.

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

The Defendants and Companies:

1.   T&S Trucking Corporation ("T&S"), was a transporter of heating oil, incorporated under the laws of New York and had an office at 53 2nd Avenue, Brooklyn, New York 11215.

2.   T&S was a transporter of oil products in the New York City Metropolitan area.

3.   The defendant TONINO SOLIMINE was the chief executive officer and sole shareholder of T&S.

4.   The defendant ESTON CLARE was the office manager of T&S.

2

## THE SCHEME TO EMBEZZLE INTERSTATE SHIPMENTS OF OIL PRODUCTS

5.   All oil and oil products sold and delivered in New
York State have traveled in interstate or foreign commerce, as no
oil drilling or oil refining occurs in New York State.  Oil
destined for customers in New York is transported to New York
State from elsewhere using interstate pipelines, barges, tankers,
trucks, and railways.

6.   Heating oil is a refined product of crude oil.
Crude oil is processed at oil refineries located outside of New
York State into, among other oil products, heating oil.  Oil
refineries produce three types of heating oil which are
identified by number: "Number 2," "Number 4," and "Number 6."
Number 2 oil is typically used in residential homes.  Number 4
oil is used in newer commercial buildings and for large heating
systems.  Number 6 oil is used in older buildings.

7.   Heating oil wholesalers purchase heating oil from
oil refiners for resale to heating oil retailers.  Prior to the
resale of the heating oil, the wholesalers store heating oil at
oil tank storage facilities known as terminals or "racks."  There
are over twenty racks located in the New York City Metropolitan
area, and the majority of the racks are located in Brooklyn, New
York.

8.   Heating oil wholesalers assign the retailers

3

rights, known as "positions," to obtain agreed upon amounts of heating oil at specific terminals. Heating oil retailers sell heating oil to residential and commercial customers. Heating oil retailers must register with the New York State Department of Taxation and Finance.

9. Heating oil transporters deliver heating oil from the terminals to residential and commercial customers for the heating oil retailers. Heating oil transporters use tanker-trucks to deliver heating oil to customers identified by the retailers. Heating oil transporters typically charge the retailers a delivery fee based upon a price-per-gallon of the heating oil. Heating oil transporters are not required to register with the New York State Department of Taxation and Finance and are not authorized to directly purchase heating oil from wholesalers and sell heating oil to residential or commercial customers.

10. Beginning in or about 2000, the defendants TONINO SOLIMINE and ESTON CLARE, together with others, embezzled heating oil that T&S obtained from terminals for delivery to the customers of heating oil retailers in the New York City Metropolitan area and Long Island, New York. The heating oil was obtained by truck drivers employed by T&S who engaged in the practice of "shorting" or "skimming" customers of the retailers.

4

"Shorting" or "skimming" involved holding back a portion of the heating oil from delivery to customers while indicating to the customer that a full delivery had been made.

11.   After "shorting" or "skimming" oil from retailers' customers, SOLIMINE, CLARE and others falsely notified the retailers that full deliveries of heating oil were made to the retailers' customers when, as SOLIMINE and CLARE well knew and believed, the retailers' customers had not received full deliveries of heating oil.  T&S submitted invoices to the retailers for the deliveries of heating oil to the customers and subsequently received payments from the retailers for the full amount of heating oil purportedly delivered to the retailers' customers.

12.   The defendants SOLIMINE and CLARE, together with others, subsequently offered the accumulated embezzled heating oil for sale to other retailers at below-market prices, primarily for cash payments.  SOLIMINE, CLARE, and others personally received payments for the sale of the embezzled heating oil.  In total, between in or about January 1, 2000 and July 12, 2007, SOLIMINE, CLARE, and others sold millions of gallons of embezzled heating oil for an aggregate amount of approximately $25 million dollars.  SOLIMINE, CLARE and others subsequently used the cash received for the sale of the embezzled heating oil for personal

5

expenses or to fund the operation of T&S.

COUNT ONE
(Embezzlement of Interstate and Foreign Shipments of Heating Oil)

13.  Paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

14.  On or about and between January 1, 2000 and July 12, 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants TONINO SOLIMINE and ESTON CLARE, together with others, did knowingly and intentionally embezzle, steal, unlawfully take, and carry away from a pipeline system, motortruck, trailer, and from a tank and storage facility, with the intent to convert to their own use, goods and chattels, to wit: heating oil, moving as and which were part of and which constituted an interstate and foreign shipment of property.

(Title 18, United States Code, Sections 659, 2 and 3551 et seq.)

COUNT TWO
(Conspiracy To Launder Money)

15.  Paragraphs 1 through 12 of this indictment are hereby realleged and incorporated as if fully set forth in this paragraph.

16.  On or about and between January 1, 2000 and July 12, 2007, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants
TONINO SOLIMINE and ESTON CLARE, together with others, did
knowingly and intentionally conspire to conduct financial
transactions affecting interstate commerce, which in fact
involved the proceeds of specified unlawful activity, to wit:
embezzlement of interstate and foreign shipments of goods, in
violation of Title 18, United States Code, Section 659, knowing
that the property involved in the financial transactions
represented the proceeds of some form of unlawful activity (a)
with the intent to promote the carrying on of the specified
unlawful activity, in violation of Title 18, United States Code,
Section 1956(a)(1)(A)(i), and (b) knowing that the transactions
were designed in whole and in part to conceal and disguise the
nature, location, source, ownership and control of the proceeds
of the specified unlawful activity, in violation of Title 18,
United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and
3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE

17.   The United States hereby gives notice to the
defendants charged in Count One that, upon their conviction of
such offense, the government will seek forfeiture in accordance
with Title 18, United States Code, Section 981(a)(1)(C) and Title

7

28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offense, including but not limited to a sum of money equal to at least approximately $25,000,000 in United States currency for which the defendants are jointly and severally liable.

18. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

> (a) cannot be located upon the exercise of due diligence;
>
> (b) has been transferred or sold to, or deposited with, a third party;
>
> (c) has been placed beyond the jurisdiction of the court;
>
> (d) has been substantially diminished in value; or
>
> (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any

8

other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TWO

19. The United States hereby gives notice to the defendants charged in Count Two that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), of all property involved in the conspiracy to violate Title 18, United States Code, Section 1956, and all property traceable to such property, including but not limited to a sum of money equal to at least approximately $25,000,000 in United States currency for which the defendants are jointly and severally liable.

20. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

9

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1))

A TRUE BILL

FOREPERSON

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY:_____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

SIR:

PLEASE TAKE NOTICE that the within will be
presented for settlement and signature to the Clerk
of the United States District Court in his office at the
U.S. Courthouse, 610 Federal Plaza, Central Islip,
New York, on the ____ day of ____, 20__, at 10:30
o'clock in the forenoon.

Dated: Central Islip, New York

_____, 20__

_____

_____
United States Attorney,
Attorney for _____

To:
_____
_____
_____
_____
Attorney for _____

_____

SIR:

PLEASE TAKE NOTICE that the within is a true
copy of _____
day of ____ duly entered herein on the ____
____ in the office of the Clerk of the
Eastern District of New York,

Dated: Central Islip, New York

_____, 20__

_____

_____
United States Attorney,
Attorney for _____

To:
_____
_____
_____
_____
Attorney for _____

---

Criminal Action No. _____

UNITED STATES DISTRICT COURT
Eastern District of New York

_____

UNITED STATES OF AMERICA

- against -

TONINO SOLIMINE and
ESTON CLARE,

Defendants.

_____

INDICTMENT

(T. 18, U.S.C., §§ 659, 981(a)(1)(C),
982(a)(1), 982(b)(1), 1956(h), 2 and
3551 et seq.; T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

_____

A true bill.

_____
Foreman

Filed in open court this ____ day of
_____ A.D. ____

_____
Clerk

Bail, $ _____

_____

Burton T. Ryan, Jr.
Assistant U.S. Attorney 631-715-7853

# Exhibit B

## PROPOSED REQUEST FOR DOCUMENTS
## FROM RESPONDENTS

1.      All data, stored electronically or otherwise, in any form indicating the names of any customers who ever received a heating oil delivery by T & S Trucking Corporation (T&S) or any other person or entity acting independently or on behalf of T&S during the time period covered by the indictment.

2.      All data, stored electronically or otherwise, in any form indicating any or all of the following information with respect to the customers who received a heating oil delivery during the time period covered by the indictment:

      a.      the number of heating oil deliveries made to each customer;

      b.      the date of each delivery;

      c.      the identity of the truck used to make each delivery;

      d.      the identity of the driver and assistant, if any, who made each delivery;

      e.      the amount of heating oil delivered to each customer with each delivery;

      f.      the total amount of heating oil delivered to each customer during the period covered by the indictment;

      g.      the amount charged to each customer for each delivery; and

      h.      the amount paid by each customer for each delivery.

3.      The names and current or last known addresses of all T&S employees or independent contractors who delivered or assisted in the delivery of heating oil for T&S during the period of time covered by the indictment.

4.      The identities of all heating oil delivery trucks owned, leased and/or used by T&S or any person or entity acting on its behalf during the period of time covered by the indictment.

5.      The identities of the oil companies for whom T&S delivered heating oil during the time period covered by the indictment.


Dated:      New York, New York
            October 27, 2008

# Exhibit C

MJL:BTR
F.#2006R01293

RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N Y

★   JUL 12 2007   ★

LONG .SL.... ..., ...CE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

LEONARD BALDARI and
MICHAEL DAVID HILLER,

              Defendants.

- - - - - - - - - - - - - - - X

I N D I C T M E N T

CR 07 568

Cr. No.
(T. 18, U.S.C., §§ 371,
981(a)(1)(C), 1342, 1346,
982(b)(1), 1956(h), 2
and 3551 et seq.;
T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

HURLEY, J.

ORENSTEIN, M.

THE GRAND JURY CHARGES:

## INTRODUCTION

        At all times relevant to this Indictment, unless
otherwise indicated:

The Defendants and Companies:

        1.   Mystic Tank Lines Corporation ("Mystic") was a
transporter of oil products, incorporated under the laws of
Delaware and located at 1901 Steinway Street, Astoria, New York.

        2.   Mystic was one of the largest transporters of oil
products in the Northeastern United States and distributed oil
products from Maine to Maryland.  The majority of Mystic's oil
transportation business was in the New York City Metropolitan
area.

        3.   Mystic operated through several related

corporations which were primarily engaged in the business of transportation services (the "transportation corporations") and the ownership of property (the "real estate corporations").

4.   The transportation corporations owned or leased trucks which transported oil products to consumers. The transportation corporations through which Mystic operated included: NY Truck Leasing Corporation, d/b/a Mystic Transportation, Inc. ("Mystic Transportation"), Anchor Transit Corporation ("Anchor"), Albany Bulk Transport, Bulk Carriers Leasing Corporation, Connecticut Bulk Transport, Inc., Long Island Bulk Transport, Inc., Michael Leasing Corporation, Mystic Bulk Carriers, Mystic Bulk Carriers of the Northeast, Mystic Petroleum Products Corporation, New England Bulk Transport L.L.C., New Jersey Bulk Transport, and RJ Guerrera Inc.

5.   The real estate corporations owned the properties where the transportation companies were located. The real estate corporations included: National Industries L.L.C., 65 South 4th Street Realty Company, Astoria Realty L.L.C., East Bay Terminals, Inc., Mystic Investments, Inc., Mystic Leasing Corporation, Mystic Realty of New Jersey L.L.C., River Road Realty L.L.C., Steinway Realty L.L.C., Western Nassau Terminal, and Western Suffolk Terminal.

3

6.   The defendant LEONARD BALDARI was the sole shareholder of Mystic, the majority shareholder of all of the real estate corporations, a fifty percent owner of Anchor's shares, and the majority shareholder of all of the transportation corporations except for Anchor.

7.   The defendant MICHAEL DAVID HILLER was Chief Financial Officer of Mystic and Mystic Transportation, and was also the president and owned fifty percent of the shares of Anchor.

### THE SCHEME TO EMBEZZLE INTERSTATE SHIPMENTS OF OIL PRODUCTS

8.   All oil and oil products sold and delivered in New York State have traveled in interstate or foreign commerce, as no oil drilling or oil refining occurs in New York State.  Oil destined for customers in New York is transported to New York State from elsewhere using interstate pipelines, barges, tankers, trucks, and railways.

9.   Heating oil is a refined product of crude oil. Crude oil is processed at oil refineries located outside of New York State into, among other oil products, heating oil.  Oil refineries produce three types of heating oil which are identified by number: "Number 2," "Number 4," and "Number 6." Number 2 oil is typically used in residential homes.  Number 4 oil is used in newer commercial buildings and for large heating

systems.   Number 6 oil is used in older buildings.

10.   Heating oil wholesalers purchase heating oil from oil refiners for resale to heating oil retailers.   Prior to the resale of the heating oil, the wholesalers store heating oil at oil tank storage facilities known as terminals or "racks."   There are over twenty racks located in the New York City Metropolitan area, and the majority of the racks are located in Brooklyn, New York.

11.   Heating oil wholesalers assign the retailers rights, known as "positions," to obtain agreed upon amounts of heating oil at specific terminals.   Heating oil retailers sell heating oil to residential and commercial customers.   Heating oil retailers must register with the New York State Department of Taxation and Finance.

12.   Heating oil transporters deliver heating oil from the terminals to residential and commercial customers for the heating oil retailers.   Heating oil transporters use tanker-trucks to deliver heating oil to customers identified by the retailers.   Heating oil transporters typically charge the retailers a delivery fee based upon a price-per-gallon of the heating oil.   Heating oil transporters are not required to register with the New York State Department of Taxation and Finance and are not authorized to directly purchase heating oil

5

from wholesalers and sell heating oil to residential or
commercial customers.

13. Beginning in or about 1990, the defendants LEONARD
BALDARI and MICHAEL HILLER, together with others, embezzled oil
that Mystic and the transportation corporations obtained from
terminals for delivery to the customers of heating oil retailers
in the New York City Metropolitan area and Long Island, New York.
The heating oil was obtained by truck drivers employed by Mystic
and the transportation corporations who engaged in the practice
of "shorting" or "skimming" customers of the retailers.
"Shorting" or "skimming" involved holding back a portion of the
heating oil from delivery to the customer while indicating to the
customer that they had received a full delivery of heating oil.

14. After "shorting" or "skimming" oil from
retailers' customers, BALDARI, HILLER and others falsely notified
the retailers that full deliveries of heating oil were made to
the retailers' customers when, as BALDARI and HILLER well knew
and believed, the retailers' customers had not received full
deliveries of heating oil. Mystic and the transportation
companies submitted invoices to the retailers for the deliveries
of heating oil to the customers and subsequently received
payments from the retailers for the full amount of heating oil
purportedly delivered to the retailers' customers.

6

15.    The defendants BALDARI and HILLER, together with others, subsequently offered the accumulated embezzled heating oil for sale to other retailers at below-market prices, primarily for cash payments.  BALDARI, HILLER and others personally received cash payments for the sale of the embezzled heating oil. In total, between in or about June 1, 1990 and July 12, 2007, BALDARI, HILLER, and others sold millions of gallons of embezzled heating oil for an aggregate amount of approximately $50 million dollars.

16.    The defendants BALDARI, HILLER, and others subsequently used the cash and other payments received for the sale of the embezzled heating oil for personal expenses or to fund the operations of Mystic, the transportation corporations and the real estate corporations.

COUNT ONE
(Embezzlement of Interstate and Foreign Shipments of Heating Oil)

17.    Paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

18.    On or about and between June 1, 1990 and July 12, 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LEONARD BALDARI and MICHAEL DAVID HILLER, together with others, did knowingly and intentionally embezzle, steal, unlawfully take, and carry away from a pipeline system, motortruck, trailer, and

from a tank and storage facility, with the intent to convert to their own use, goods and chattels, to wit: heating oil, moving as and which were part of and which constituted an interstate and foreign shipment of property.

(Title 18, United States Code, Sections 659, 2 and 3551 et seq.)

## COUNT TWO
(Conspiracy To Launder Money)

19.    Paragraphs 1 through 16 of this indictment are hereby realleged and incorporated as if fully set forth in this paragraph.

20.    On or about and between January 1, 1990 and July 12, 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LEONARD BALDARI and MICHAEL DAVID HILLER, together with others, did knowingly and intentionally conspire to conduct financial transactions affecting interstate commerce, which in fact involved the proceeds of specified unlawful activity, to wit: embezzlement of interstate and foreign shipments of goods, in violation of Title 18, United States Code, Section 659, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of the specified

unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE

21.   The United States hereby gives notice to the defendants charged in Count One that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offense, including but not limited to the following:

#### Money Judgment

A sum of money equal to at least approximately $50,000,000 in United States currency for which the defendants are jointly and severally liable;

#### Specific Property

(a)   All right, title and interest in the real

9

property and premises known as 17 Lloyd Lane, Lloyd Harbor, New York, designated as District 0403, Section 006.00, Block 03.00, Lot 015.001 on the Suffolk County Tax Rolls, and all proceeds traceable thereto;

(b)  All right, title and interest in the real property and premises known as 346 Wonder Lane, Jamaica, Vermont, designated as Lot 6 on a survey entitled Plat of a Survey of Lands of P.B.J. Associates, L.L.C. "Wheeler Woods Subdivision" Jamaica Windham Co. Vermont, drawing number DC-0366, and all proceeds traceable thereto;

(c)  All right, title and interest in the funds deposited in, or transferred to or through, account number 7826078623 held at North Fork Bank in the name of "Leonard Baldari," and all proceeds traceable thereto;

(d)  All right, title and interest of the defendants in Mystic Tank Lines Corp., and all proceeds traceable thereto;

(e)  All right, title and interest of the defendants in Anchor Transit Corp., and all proceeds traceable thereto;

(f)  All right, title and interest of the defendants in National Industrial, L.L.C., and all proceeds traceable thereto; and

10

(g)   All right, title and interest of the
defendants in Steinway Realty, L.L.C., and all proceeds traceable
thereto.

22.   If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

>           (a) cannot be located upon the exercise of due
>           diligence;
>
>           (b) has been transferred or sold to, or deposited
>           with, a third party;
>
>           (c) has been placed beyond the jurisdiction of the
>           court;
>
>           (d) has been substantially diminished in value; or
>
>           (e) has been commingled with other property which
>           cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), as incorporated by Title 28,
United States Code, Section 2461(c), to seek forfeiture of any
other property of such defendants up to the value of the
forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title
18, United States Code, Section 981(a)(1)(C); Title 21, United
States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TWO

23.   The United States hereby gives notice to the defendants charged in Count Two that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), of all property involved in the conspiracy to violate Title 18, United States Code, Section 1956, and all property traceable to such property, including but not limited to the following:

### Money Judgment

A sum of money equal to at least approximately $50,000,000 in United States currency for which the defendants are jointly and severally liable;

### Specific Property

(a)   All right, title and interest in the real property and premises known as 17 Lloyd Lane, Lloyd Harbor, New York, designated as District 0403, Section 006.00, Block 03.00, Lot 015.001 on the Suffolk County Tax Rolls, and all proceeds traceable thereto;

(b)   All right, title and interest in the real property and premises known as 346 Wonder Lane, Jamaica, Vermont, designated as Lot 6 on a survey entitled Plat of a Survey of Lands of P.B.J. Associates, L.L.C. "Wheeler Woods Subdivision"

12

Jamaica Windham Co. Vermont, drawing number DC-0366, and all proceeds traceable thereto.

(c)   All right, title and interest in the funds deposited in, or transferred to or through, account number 7826078623 held at North Fork Bank in the name of "Leonard Baldari," and all proceeds traceable thereto;

(d)   All right, title and interest of the defendants in Mystic Tank Lines Corp., and all proceeds traceable thereto;

(e)   All right, title and interest of the defendants in Anchor Transit Corp., and all proceeds traceable thereto;

(f)   All right, title and interest of the defendants in National Industrial, L.L.C., and all proceeds traceable thereto; and

(g)   All right, title and interest of the defendants in Steinway Realty, L.L.C., and all proceeds traceable thereto.

24.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited

13

with, a third party;

(c)   has been placed beyond the jurisdiction of

the court;

(d)   has been substantially diminished in value;

or

(e)   has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18,

United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendants up to the value of the

forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and

982(b)(1))

A TRUE BILL

FOREPERSON

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY:_____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

Criminal Action No.

UNITED STATES DISTRICT COURT
Eastern District of New York

UNITED STATES OF AMERICA

- against -

LEONARD BALDARI and
MICHAEL DAVID HILLER,

Defendants.

INDICTMENT

(T. 18, U.S.C., §§ 659, 981(a)(1)(C),
982(a)(1), 982(b)(1), 1956(h), 2 and
3551 et seq.; T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

_____
A true bill.

_Emiliano Carillo_
Foreman

Filed in open court this _____ day of
_____ A.D. _____

_____
Clerk

Bail, $ _____

Burton T. Ryan, Jr.
Assistant U.S. Attorney 631-715-7853

---

Dated: Central Islip, New York

_____, 20 ___

_____
United States Attorney,
Attorney for _____

To:

SIR:

PLEASE TAKE NOTICE that the within will be
presented for settlement and signature to the Clerk
of the United States District Court in his office at the
U.S. Courthouse, 610 Federal Plaza, Central Islip,
New York, on the ____ day of _____, 20 __, at 10:30
o'clock in the forenoon.

Dated: Central Islip, New York

_____, 20 ___

_____
Attorney for _____

SIR:

PLEASE TAKE NOTICE that the within is a true
copy of a _____
duly entered herein on the ____
day of _____
_____, in the office of the Clerk of the
Eastern District of New York.

Dated: Central Islip, New York

_____, 20 ___

_____
United States Attorney,
Attorney for _____

To:

Attorney for _____

# Exhibit D

# SEIFF KRETZ & ABERCROMBIE

CHARLES D. ABERCROMBIE*
WALTER A. KRETZ, JR.
ERIC A. SEIFF
————
MARIANA OLENKO

*ALSO ADMITTED IN CT

444 MADISON AVENUE
30TH FLOOR
NEW YORK, N.Y. 10022-6926
(212) 371-4500
FAX (212) 371-6883

ROLAND R. ACEVEDO
OF COUNSEL

COURTESY COPY OF ECF DOCUMENT NO. 52

May 8, 2008

Hon. Joanna Seybert
United States District Judge
United States District Court
Eastern District of New York
934 Federal Plaza
Central Islip, New York  11722-1094

      Re:    United States v. Solimine, et al., CR 07 567 (JS)(MLO)

Dear Judge Seybert:

      We represent the Rent Stabilization Association of N.Y.C., Inc. (RSA), a trade association comprised of thousands of small-, medium- and large-sized residential property owners and managers who own and/or manage approximately one million apartments throughout the City of New York.

      A substantial number of RSA's members were customers of the entities involved in the oil embezzlement schemes described in the indictment in the above-referenced prosecution and in a related prosecution, United States v. Baldari, et al., CR 07 568 (DRH) (MLO).  They have suffered extensive losses as a result of the embezzlement, though in amounts not yet determined.

      We understand that the United States Attorney's Office is pursuing forfeiture of the assets of the defendants and perhaps the entities through which they conducted their alleged criminal activities.  We are concerned that sufficient assets are allocated to restitution to ensure that the members of RSA victimized by the defendants ultimately can be made whole.

      We have notified the United States Attorney's Office of our claim for restitution, and have written to the Assistant in charge of the prosecutions to express our desire, pursuant to 18 U.S.C. § 3771, to work with the government to coordinate our fact gathering with the data the government has compiled to properly identify the victimized RSA members and accurately assess the extent of the losses suffered by them.  In doing so, we would hope to be able to streamline our presentations to the

SEIFF KRETZ & ABERCROMBIE

Hon. Joanna Seybert
May 8, 2008
Page two


Probation Department and this Court in support of our claim.  We are awaiting the
government's response.


                                        Respectfully submitted,

                                        Walter A. Kretz, Jr. (WK-4645)


cc:    Burton T. Ryan, Jr., AUSA
       All Counsel of Record by ECF Transmission
       Joseph Strasburg
         President, RSA
       Mitchell Posilkin
         Counsel, RSA